IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
F I L E D

APR 1 2 2024

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| CAITLYN ROSE EICHMANN, § § *Plaintiff,* § § v. § § THE UNIVERSITY OF HOUSTON § SYSTEM & FELIPE EDUARDO HARKER, § § *Defendants.* § § | CASE NO. 3:24-CV-106 JURY |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HON. JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE:**

Plaintiff, Caitlyn Rose Eichmann, files this original complaint against defendants, the University of Houston System, and Felipe Eduardo Harker, and for causes of action alleges as follows:

### PARTIES

1. Plaintiff, Caitlyn Rose Eichmann, is an individual who is a citizen of the State of Texas.

2. Defendant, the University of Houston System ("UHS"), is a public institution of higher education of the State of Texas, having been created as such by an act of the state legislature of the State of Texas, may be served by delivering a copy of the summons and of the complaint to its chief officer, Renu Khator, at 311 East Cullen Building, Houston, Texas 77204-2028.

3. Defendant, Felipe Eduardo Harker ("Defendant Harker"), an individual and a citizen of the State of Texas, may be served with process at 7410 Hickory Canyon Court, Humble, Texas 77396, or wherever Defendant Harker may be found.

## JURISDICTION

4. The Court has jurisdiction over the lawsuit because the suit arises under Title IX of the Education Amendments of 1972 to the Higher Education Act of 1965, 20 U.S.C. § 1681(a).

5. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiff's state-law claims against Defendant Harker because plaintiff's state-law claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant Harker resides in this district and all defendants reside in this state.

## CONDITIONS PRECEDENT

7. All conditions precedent have been performed or have occurred.

## FACTS

8. At all times relevant to this action, plaintiff was a student at the UHS.

9. Under a contract between plaintiff, or her parents acting on her behalf, and Defendant UHS, Defendant UHS undertook to accept plaintiff as a student. As one of the conditions of that acceptance, plaintiff was permitted to reside on Defendant UHS' main campus in a room provided by Defendant UHS at the University Lofts, located at 4200 Martin Luther King Boulevard, Houston, Texas 77204-7004. Defendant UHS charged and received a rental fee for this room.

10. On March 2, 2022, at approximately 7:30 P.M. plaintiff and her friend Sobouh Rahimi were at a coffee shop called "The Nook" across the street from Defendant UHS' main campus. Defendant Harker happened to also be at the Nook at that time. While at the Nook,

Defendant Harker approached plaintiff and Rahimi without an invitation from plaintiff and began conversing with them.

11. Plaintiff had been introduced to Defendant Harker in passing on a prior occasion during the Fall 2021 semester while they were both students at Defendant UHS and was aware that he also resided in the University Lofts. However, plaintiff had no relationship with Defendant Harker besides merely knowing of his existence as a resident of the University Lofts.

12. At approximately 7:41 P.M., plaintiff accompanied Rahimi to his dormitory room on the fifth floor of the University Lofts at 4700 Martin Luther King Boulevard, Houston, Harris County, Texas to have a glass of wine. Defendant Harker also accompanied plaintiff and Rahimi to Rahimi's dormitory room and began to drink wine with them.

13. Later that evening or in the early morning hours of March 3, 2022, plaintiff went with Defendant Harker to his dormitory room on the eighth floor of the University Lofts, room #C811. Once in Defendant Harker's room, he began pouring them pink lemonade beverages containing vodka. Plaintiff began to feel uncomfortable being alone with Defendant Harker in his dormitory room, as she had a boyfriend and was not interested in a romantic relationship with Defendant Harker.

14. Around this time, plaintiff began feeling intoxicated and started to black out. Therefore, at approximately 3:00 A.M. plaintiff and Defendant Harker walked from the University Lofts to the Gerald D. Hines Architecture building on Defendant UHS' main campus.

15. Although plaintiff had no memory of leaving the Lofts, she and Defendant Harker were viewed walking around and eventually entering the south side of the architecture building at approximately 4:46 A.M. Plaintiff, still not being in her right mind and only remembering bits and pieces of events, began sitting by a pond outside the architecture building with Defendant Harker.

3

Defendant Harker then escorted plaintiff back to their dorm at approximately 5:03 A.M., and they returned to their dorm at approximately 5:18 A.M. Defendant Harker then took plaintiff back to his dormitory room.

16. By the time they returned to Defendant Harker's dorm room, plaintiff had lost all her memory save for a few flashes in and out. What plaintiff does remember from that time was Defendant Harker having his hands around her neck, squeezing her neck, and trying to have sex with her. Beyond these images, plaintiff's memory is blank.

17. The next thing plaintiff remembered was waking up in Defendant Harker's bed in a state of complete undress except for her underwear. Plaintiff requested Defendant Harker to bring her clothes so that she could dress without him observing her naked. Plaintiff realized that Defendant Harker had sexually assaulted her, as she became aware that she had sex but had no memory of consenting to engaging in sexual intercourse with him. Plaintiff quickly dressed and then left Defendant Harker's dorm room.

18. Plaintiff then made an immediate outcry to her boyfriend and her sister-in-law, Sarah Eichmann. After making the outcry to her sister-in-law, plaintiff was transported by her sister-in-law to St. Luke's Hospital where she received a sexual assault examination performed by Sexual Assault Nurse Examiner Kelsi Richardson.

19. During the SANE examination Richardson observed bruising, scratches, and fingermarks on plaintiff's neck during the SANE examination which was consistent with strangulation. This observation was corroborated by Detective Roland J. Henderson of the University of Houston Police Department's Criminal Investigation Division.

20. Furthermore, during the SANE examination a toxicology report was prepared based on plaintiff's blood alcohol level and her urinary alcohol level from samples taken at noon on

March 3, 2022. The toxicology reported reflected plaintiff's BAC at noon to be 0.087 and her urine sample results showed a 0.112 alcohol level.

21. On March 3, 2022, a search warrant was served on Defendant Harker for items in his dormitory room and forensic genetic testing was performed on certain items recovered from Defendant Harker's dormitory room during the search and from plaintiff's person and certain of her personal items from the night in question.

22. On or about April 22, 2022, plaintiff observed Defendant Harker for the first time since her sexual assault. Unfortunately, plaintiff was taken aback by her observation as she observed him entering the University Lofts. In fact, plaintiff saw Defendant Harker at the University Lofts even though she was one Defendant UHS asked to move into another university housing unit.

23. Seeing Defendant Harker at the University Lofts caused plaintiff serious emotional distress which required her to seek mental health counseling and be prescribed medication. In addition, the mental distress she suffered during this period of time caused plaintiff to be unable to concentrate in her classes resulting in her withdrawal from them for that semester and eventually from Defendant UHS completely.

24. Specifically, after April 22, 2022, when plaintiff realized that Defendant Harker would not be removed from Defendant UHS or even the University Lofts, plaintiff was unable to psychologically cope with being in an environment near him any longer and eventually was forced to withdraw from Defendant UHS entirely due to her inability to sleep and study that this trauma caused. This withdrawal has resulted in a delay in almost two years for plaintiff in obtaining her undergraduate degree.

25. After being made aware of the sexual assault by Defendant Harker, Defendant UHS

EOS office informed plaintiff that it would investigate the allegations and permitted plaintiff to move into a different campus housing unit. However, Defendant UHS' EOS office later informed plaintiff that nothing would be done in response to her sexual assault complaint unless she recounted in detail what had happened to her. Plaintiff informed Defendant UHS' EOS office that she had already given a full statement to Defendant UHS' police department and provided it with the detective's contact information. Later, on or about April 22, 2022, Defendant UHS deemed plaintiff to be unwilling to cooperate and dropped its investigation. This was the first-time plaintiff had notice of Defendant UHS' deliberate indifference to her sexual assault.

26. Plaintiff herself made a report to the supervisor of the University Lofts, and requested remedial action be taken such as removing Defendant Harker from the University Lofts. The supervisor informed her that Defendant UHS' Title IX coordinator's office had not informed her of any concern related to Defendant Harker but that she would transfer plaintiff's complaint to the individual in charge of student safety at the University Lofts for a full investigation into the matter. However, no remedial action was ever taken in response prior to plaintiff withdrawing from Defendant UHS.

27. On or about June 2023, the genetic testing results were completed. These results showed that Defendant Harker had touched plaintiff's right and left breasts, her right and left neck areas, her black underwear, her green lace bralette (inside the front left and right cups, and bottom band), and had used a condom during the incident. This information led to the arrest of Defendant Harker.

28. Although Defendant UHS' police department recommended criminal charges be brought against Defendant Harker, Defendant UHS dragged its feet with its Title IX investigation. Even though Defendant UHS was notified in November 2023 that the State of Texas would not be

pursuing a criminal action against Defendant Harker, Defendant UHS did not make plaintiff aware that it would not be taking any remedial action against Defendant Harker until it contacted plaintiff by telephone at the end of January 2024.

29. In addition to her lost educational benefits resulting from Defendant UHS' failure to take remedial action against Defendant Harker, has incurred medical expenses from her treatment at St. Luke's Hospital, as well as other collateral expenses of moving out of the University Lofts.

### COUNT 1 – SEXUAL ASSAULT BY DEFENDANT HARKER

30. Plaintiff incorporates paragraphs 1 - 29 by reference herein.

31. Defendant Harker made physical contact with plaintiff's sexual organs.

32. Defendant Harker made this sexual contact intentionally or knowingly which was offensive to plaintiff as she had no ability to consent.

33. Defendant Harker knew or reasonably should have believed that plaintiff would regard the sexual physical contact as offensive as he had to use unwanted physical force to complete the sexual assault.

34. Defendant Harker's actions resulted in the following damages: (a) physical pain and suffering; (b) disfigurement; (c) mental anguish and emotional distress in the past and the future; (d) medical expenses in the past and the future; (e) loss of consortium; and (f) loss of educational benefits.

35. Plaintiff seeks damages within the jurisdictional limits of this Court.

36. <u>Exemplary damages</u>. Plaintiff's injury resulted from Defendant Harker's malice, which entitles plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## COUNT 2 – NEGLIGENCE OF UHS UNDER TTCA

37. Plaintiff incorporates paragraphs 1 – 29 by reference herein.

38. Defendant UHS is a governmental unit that operates dormitories.

39. Defendant UHS, by virtue of the above-mentioned contract, undertook to and was obligated to provide reasonable means to secure the person and property of the students, including plaintiff, while they were residents on Defendant UHS' main campus.

40. The above-described attack occurred because of the negligence of Defendant UHS and Defendant UHS would be liable to plaintiff under Texas law. Specifically, Defendant UHS negligently failed to provide adequate measures of security, including patrols, locks and reasonable rules and regulations to be observed by the students to prevent student-residents from sexually assaulting other students in its dorms.

41. As a result of the above-described sexual assault, plaintiff sustained grievous bodily injury, has been prevented from fulfilling her duties as a student for 12 months, and has suffered great physical pain and mental anguish.

42. Plaintiff seeks recovery of damages within the jurisdictional limits of this Court.

## COUNT 3 – UHS' VIOLATION OF TITLE IX

43. Plaintiff incorporates paragraphs 1 – 29 by reference herein.

44. Plaintiff was a female student protected under Title IX, 20 U.S.C. § 1681(a).

45. Defendant UHS is an educational institution within the meaning of Title IX, is engaged in providing educational services to students and which provides dormitory living for students all the while receiving federal financial assistance.

46. Defendant Harker was a fellow student of plaintiff's who attended Defendant UHS' main campus and resided in its University Lofts dormitory.

8

47. Defendant UHS created a sexually hostile educational environment through its discriminatory actions of its failure to provide adequate measures of security, including patrols, locks and reasonable rules and regulations to be observed by the students to prevent student-residents from sexually assaulting other students in its dorms. This environment deprived plaintiff of educational opportunities and benefits provided by Defendant UHS.

48. Defendant UHS is liable because it was deliberately indifferent to remedying the discriminatory conduct of which it had actual knowledge. Specifically, Defendant UHS failed to adequately investigate plaintiff's sexual assault complaint and failed to ensure she would not be subjected to continuing assault and harassment by failing to move Defendant Harker and requiring plaintiff to have to interact with him on a regular basis. Furthermore, Defendant UHS failed to provide any remedial action to plaintiff for the emotional suffering she endured.

49. Defendant UHS is vicariously liable for Defendant Harker's discriminatory conduct. Specifically, Defendant UHS did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though plaintiff took advantage of Defendant UHS' measures designed to prevent and correct such discriminatory conduct by reporting same to Defendant UHS' housing advisor for the University Lofts and to Defendant UHS' Title IX compliance office.

50. Based on Defendant UHS' inadequate response, plaintiff suffered a decline in grades, avoidance of social activities on campus, avoidance of certain areas of campus, the loss of financial aid, withdrawal from Defendant UHS altogether, and loss of ability to graduate and earn a living.

51. As a direct and proximate result of Defendant UHS' conduct, plaintiff suffered the following injuries and damages: (a) the loss of her anticipated receipts under her agreement to

attend Defendant UHS including but not limited to loss of educational benefits; and (b) consequential losses she incurred because of Defendant UHS' violation of Title IX including but not limited to medical expenses in the past and the future.

## JURY DEMAND

52. Plaintiff asserts her rights under the Seventh Amendment to the Unites States Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues. a jury trial and tenders the appropriate fee with this petition.

## ATTORNEY FEES & COSTS

53. Plaintiff is entitled to an award of attorney fees and costs under Title IX, 20 U.S.C. § 1681(a).

## PRAYER

54. For these reasons, plaintiff asks for judgment against defendants, jointly and severally, for the following: (a) the loss of her anticipated receipts under her agreement to attend Defendant UHS including but not limited to loss of educational benefits; (b) consequential losses she incurred because of Defendant UHS' violation of Title IX including but not limited to medical expenses in the past and the future; (c) compensatory damages; (d) punitive damages; (e) prejudgment and postjudgment interest on such damages, including attorney fees, as allowed by law; (f) reasonable attorney fees; (g) costs of suit; and (h) all other relief as the Court deems appropriate.

Respectfully submitted,

*[signature]*

MARK ARONOWITZ
State Bar No.: 00793281
S.D. Tex. Id. No.: 20421
P.O. Box 1201
Texas City, TX 77592-1201
Tel.:   (409) 599-6685
Fax:   (281) 715-4284
Email: markaronowitz@hotmail.com

OF COUNSEL:
JULIA CATHERINE HATCHER
State Bar No.: 24004692
S.D. Tex. Id. No.
1622 Campbell Lane
Galveston, TX 77551
Email: juliachatcher@gmail.com

ATTORNEY IN CHARGE FOR PLAINTIFF,
CAITLYN ROSE EICHMANN

11